Biolitec AG, et al. Mr. Griffith. Good morning, Your Honors. Should I say welcome back? Thank you very much. It's good to be here. As you know, my name is Ed Griffith, and I represent the appellants in this case. Biolitec AG, Biomed Technology Holdings Limited, and Wolfgang Neuberger. Be sure you speak up and to the microphone. I'll try to do that. And could I reserve five minutes for rebuttal? Yes, you may. Thank you. The issue raised in this appeal is really whether a district court has the authority or jurisdiction to issue coercive civil contempt sanctions to coerce compliance with an order that is expired. As you all know, this is our second appeal of the district court's imposition of coercion. And you could have raised that in that first appeal, could you not? I don't think so. Why not? You knew about it already shortly after your appeal. You didn't raise it at any time, even inferentially, during our previous hearing. You did mention it in your Supreme Court cert petition. Why couldn't you have mentioned it then, and why aren't you bound by the fact that you did mention it? Well, I don't think we had an opportunity to answer the question why we didn't. We didn't have an opportunity because we submitted our opening brief prior to the expiration of the preliminary injunction. And shortly thereafter, the order was issued, the default judgment, and you could have filed a 28-J letter. I think your reply brief had not been. You're right. Our reply brief was filed after the final judgment and the expiration of the preliminary. And at your argument, you didn't raise that either. That's correct. We took the position then, we think it was a correct position, that that appeal challenged the district court's issuance of the original contempt order. And we challenged that order on the grounds that. But you could have made that very same argument that you're making today then. I don't think we could have because the district court really hadn't even done anything that would have been objectionable at that point. One of the points that ADI raises in this appeal is that we should have gone to Judge Ponser. We didn't need to go to Judge Ponser first because he, Sua Sponte, issued a new contempt order. And it was that action of the district court that we are appealing. Prior to that order, the remand order on contempt, there was nothing for us to bring to your attention. Now, I suppose we could have. How is the initial order any different vis-à-vis it being meaningful from the newest one which contains the cap? Because the original order was issued at a time when the preliminary injunction was in full force in effect. And we challenged that order, Judge Barron, on the grounds that the imposition of multimillion dollar sanctions that escalated every month and an arrest warrant were so draconian that it rose to the level of criminal. But I'm asking a slightly different question. That contempt order presumably you treated as having imposed sanctions. The original? Yes. Yes, of course. Okay. This one imposed sanctions. Yes. Okay. All that's happened is they haven't collected on the sanction. No, that's not. I disagree with that, Judge Barron. Why? Because the contempt order was to coerce compliance with a preliminary injunction. Right. But what happened between the issuance of the original order and the remand order was that preliminary injunction expired. And so there's no order to coerce compliance. That's a different point. That would be why ongoing you might have an argument that there's no obligation had they not put a cap on it for there to be the fines would not continue to escalate post-expiration. My question, though, is when he initially imposed sanctions, just as with respect to this order, which has a cap, it's true that they have not sought to collect on it. But you seem to be treating it as if, in fact, he never even really imposed the sanction yet. It was all conditional. I'm just not quite understanding what's before us. We're not saying that he didn't impose sanctions under the original order. Well, if he did, then what I don't understand is while the order may have expired, why can't he now collect on the sanction that he imposed from the prior time when it would have been for the purpose of coercing compliance with the order? Because the case law is uniform that where the purpose of the civil contempt sanctions is to coerce compliance. When the underlying order for which compliance is sought expires, the purpose of the coercive sanctions vanishes. But back at the time he imposed the sanction, there was such a purpose. That's right. That's what I don't understand. If you're in jail on a coercive thing, every day you're in jail, you're in jail. You had that punishment, right, where that burden was imposed on you. Yes. Going forward, they can't keep you in jail once the order expires to coerce compliance. If they had made you pay and collected on it each month during that escalated fine period, you wouldn't be entitled to recruitment of the funds now that the order expired. I'm not sure if that's true or not. Do you think they'd have to pay you back the money after it expires? Is there any authority for that? No. As Justice Scalia says, the opposite of Bagwell. He suggested once it's been paid, that was legitimate coercion of compliance with the order. So all that's different here is he didn't actually collect on the sanction that he imposed. So why can't he now collect on the sanction? Well, in Bagwell, the order never expired. And in this case, we cite several cases, Your Honor, that involves that. I understand. I'm asking the theoretical question. Right. What is the logic of saying that a sanction that was imposed to coerce compliance, but they didn't collect on the actual money, now means they can't go back and collect on it? You did violate it. There was a sanction imposed. You seem to think now you can't collect on it. Had he collected at the time, it would have been perfectly legitimate. I don't know if that's true. I think that it would have been perfectly legitimate. He couldn't collect at the time? It would have been perfectly legitimate until the order expired. Because once the order expires. Then he's got to pay you all the money back? I think so. Because the court is saying. Well, there's no case that says that. Well, there's no case with this fact pattern. Right. It really is a unique case. Well, it's unique in the sense that no order of any court has been complied with by your client, which is why we're here again, I guess. Well, I wouldn't agree with that, except I don't think it's necessary to get into it. I looked at the record pretty closely. Right. But I think actually, I mean, in terms of that, I mean, one of the points that ADI makes, for example, is that regardless of the expiration of the preliminary injunction, there's still this need for compliance. Well, that makes no sense at all. We've always taken the position, as Judge Stahl and Judge Lynch know, that the purpose of the preliminary injunction was to prevent the movement of assets out of Germany. And that was to preserve Germany as a potential jurisdiction for ADI to attempt to collect a judgment. And we took the position that our client scrupulously complied with that part or that intent of the injunction, and that's why I would take issue with what you just said about my client. But regardless of that, when the preliminary injunction expired, there's been absolutely no restriction on my client from moving assets out of Germany. If you were in a civil contempt proceeding to coerce compliance, if they had jailed your client, when the order expired, would they owe damages to your client for the unfair jail time he served? I don't know. Okay, but the answer has to be no. I have to say I agree with you. Okay, so similarly, I would assume if they collected on the sanction amount and a seriatim basis up to that point, I don't see why they'd have to recoup you the money afterwards. And if that's true, I'm having trouble seeing why they can't now go back and collect on the sanction that was already imposed. Well, I understand the point you're raising, and it is an interesting point. All I can say is that the cases that have dealt with very similar situations in which the underlying injunction has expired or been vacated, they've held the outstanding awards. The FTC case, for example, which is really pretty similar to this. That involved some really pornographers overseas who the FTC filed. The judge ordered disclosure of their worldwide assets. They were in contempt. $16.5 million in coercive sanctions were imposed. And then when that injunction to disclose the information was not continued in a permanent injunction, on appeal, the Second Circuit, sua sponte, apparently, vacates the award, citing the Supreme Court's Shilatani case, saying that when the purpose of the coercive sanctions ---- It's not clear from the record there whether there had been sanctions previously paid or whether they're only talking about going forward ones. The Sixth Circuit, Jaschinski does pretty much exactly what you're asking for here as I read it. I'm not sure. I can't recall completely, but I can address it in a Rule 28 letter. But I thought that the $16.5 million in FTC had not been paid. In fact, I think there was a front page New York Law Journal on that issue in which the lawyer representing said that there's no way my money was paid. Can I ask you, who is the money to be paid to? I think that's fairly clear. It's to the United States government. Is there anything in the record that tells us who gets the sanction? Nothing other than the case law that says that the purpose of coercive sanctions is not to compensate the complainant. In your view, what your opponent should have done is continue the injunction or make it a permanent injunction in order to give the sanctions order viability? Yes, they could have done that. We think that reflects a complete lack of interest in the stated purpose of the injunction, which was to preserve Germany as an enforcement jurisdiction because as the really uncontested declarations of German law that we've submitted and all of these proceedings indicate, the German court would never recognize this judgment anyway. Or alternatively, I guess the district court could collect along the way. The district court has no means of collecting along the ways, but if the court could have done that. What do you say it has no means of collecting along the way? How so? How does it work? I don't quite understand how this thing is going to get paid. Because there are no assets in this country. There's no assets in this country, absolutely. You physically couldn't have been collected. Physically, and that's nothing new. That's where the argument begins, that you stripped the assets and got them out of the country, bankrupted the company so they couldn't collect on their own. No, that's not true, Your Honor. That's simply not true. The record indicates that the defendants in this case never had any assets in the United States. Beileit AG was a German company that became an Austrian company. It had assets in Germany, at least up until the expiration of the Golden Ratio Act. Doesn't that hurt your position in the sense that that sounds like a fairly good argument for us treating it, as if in fact he was imposing and trying to collect all along, so that $70 million judgment would stand? What else could he have done to get a hold of those funds other than what he did? Well, actually, I think that cuts against the argument for the imposition of sanctions anyway. Because, again, another uniform principle of contempt law is that where there's no possibility of sanctions being effective to coerce compliance, the sanctions should not be imposed. That's only because the funds, you could have made the funds available by undoing the merger. Well, and if we had undone the merger, which, again, was a question mark in terms of whether it would ultimately have been approved, that we could have taken the steps to initiate a reverse merger that theoretically could have undone it. The declarations we submitted on that indicated that it was highly unlikely that the regulatory authorities in Europe would approve that. But had we done that... You may have violated the injunction on the theory that you could get away with it. Well, I don't think that's fair either, really, because I think that... Why not? Well, I think, as I said before, looking at this situation right now, I think it's very clear, and I don't think it's even contested that the purpose of the injunction was to prevent the assets from being moved out of Germany. And there is no evidence that, while the preliminary injunction was in effect, that any assets were moved out of Germany. The merger, the only thing the merger did was make a German company with assets in Germany an Austrian company with assets in Germany. And that didn't affect ADI's ability to enforce its judgment in Germany at all. The problem, and there was two layers of arguments as to why Germany was not a viable enforcement jurisdiction, and the first one being that under German law, this particular judgment, even if it was on the merits, wouldn't have been enforced. So I think that's why I think your observation is not quite correct. May I ask what I hope is the last question of you? Sure. The original $70 million judgment, is it your position now that that is invalid or simply that if there are no assets in Germany, it can't be reached in Germany and Austria will not allow a judgment of that type to be collected on? Well, Judge, we racked our brains to try to figure out why the issuance of the remand contempt order would give us an argument to revisit the default judgment, but unfortunately we haven't been able to come up with a compelling one. Okay. Thank you. Thanks. Good morning. May I please have the floor? So the argument is you should have kept the preliminary injunction in place and then they wouldn't have this argument to make. So what's your response to that? Yes, thank you, Judge Dahl. I'm sorry, Judge Lynch. We don't look very much alike. No, that's true. I apologize. Well, I'm proud to be compared. Thank you, Your Honor. I apologize, Judge Lynch. The preliminary injunction was issued, like I believe most preliminary injunctions, for the purpose of preserving the status quo. At the time that it was issued, BioLitech AG, as has already been described, was a German company. The concern was that they were about to move it to Austria, where the judgment could not be enforced. And so Judge Ponzer, originally it was Judge Sobel who issued it as a TRO, and then Judge Ponzer continued it as a preliminary injunction to preserve the status quo. The problem is, and of course this Court affirmed, and Judge Lynch, you were of course on that panel, you presided over that panel that affirmed the preliminary injunction, and that is a final decision, of course. Once the preliminary injunction is violated, it really serves very little purpose anymore because the status quo, an injunction, the injunction literally said, defendants shall not carry out the proposed downstream merger that moves BioLitech AG to Austria. And then they did, and then there were the contempt orders. Yes, Your Honor. Okay. Proceed. And the contempt order is, in the contempt order, Judge Ponzer found the defendants in civil contempt, which was never even disputed that those elements were met, and he directed them to restore the status quo ante. And that was what was important to my client. I mean, at that point, the preliminary injunction had no purpose or value unless the status quo ante was subsequently restored. An order saying do not move the company to Austria really has no value to AngioDynamics once the company has actually already been moved to Austria in violation of that injunction. So what's important to us, very, very important to us, and I believe to the district court and to this court as well, in the opinion that Judge Stahl authored, is that there's a directive to restore the status quo ante. And just to get to the question that you were asking about, Judge Barron, you're absolutely correct. The sanctions were in place from the moment that Judge Ponzer issued his contempt order back in April of 2013. And they were accruing, and it's not like he said, I'm not trying to collect or impose or have those sanctions actually take effect. He actually said, you know, as far as the arrest warrant, he asked the marshals to take every step possible to execute that arrest warrant and take Neuberger into custody. The only reason why those sanctions didn't go into effect is that Neuberger chose to become a fugitive. He lives, I think in your opinion, Judge Stahl, you pointed out that he has residences on four continents. And so he chose not to come to the United States or to stay out of those jurisdictions that might, you know, collect him into custody. And he's continued to do that. He's been a fugitive for almost three years now. But the fines were ordered to start right away. And I guess the reason why that's relevant to the waiver argument is that at the time we were here, we were actually here almost exactly one year ago today on the earlier appeal. At that point, the sanctions were accruing. They were going on. They were in place. The order was in place. And the judgment had entered at that point when we appeared before. You weren't on the panel, Judge Barron, but Judge Lynch and Judge Stahl were. At that point, the judgment had been in place for nine, ten months already. And this argument was never raised. It wasn't raised on the contempt appeal or the judgment appeal, which was actually taken after. So it's not really this issue was there or was raised, as Judge Stahl suggested in the earlier question, that this issue was there. Two things. You agree that the fines are to the United States, that you won't get the money? Yes. Okay. And then with respect to the arrest warrant issue, I take the point that you just made, that even if the contempt order effectively has to expire with the expiration of the preliminary injunction, that wouldn't matter with respect to the monetary sanctions because they were already imposed. There's no reason for those to go away. With respect to the arrest warrant, if the appellants here are correct that the expiration of the preliminary injunction order effectively prohibits the contempt order from having ongoing effect because it can't coerce compliance with an expired order, what would be the basis for saying that the arrest warrant can still be outstanding? Well, I guess the first part of the premise, I guess, of what you said. I understand you're going to challenge that premise, but if you didn't challenge the premise, would there be any basis for saying that the arrest warrant could still be outstanding? I understand the argument for why they still would be owing $70 million because that was a sanction already imposed. But the arrest warrant, they were already suffering the burden of having the arrest warrant out there. The question is, should there still be an arrest warrant going forward? What would it be coercing compliance with? Well, I guess if the court were to conclude that the contempt order could no longer attempt to coerce the defendants to restore the status quo ante because the preliminary injunction has expired, then I think that both of the sanctions would fall. Well, why would the $70 million? Because that was, I thought, an already imposed sanction. It was, but it exists to coerce the defendants to comply. Yeah, but it had that effect every time it was imposed. So what would be a reason to say now it goes away? I don't understand that. I know the cases seem to suggest that in other circuits, but I'm at a loss as to what the logic of that is. Well, I guess all I can say, Your Honor, I understand the question you're raising, but I guess to me the point is that there is an order still out there that these sanctions are intending to coerce compliance with. That order is the contempt order, which says I'm directing you to restore the status quo ante. That order is still out there. Yeah, but that would be true in all of the Second Circuit and the Sixth Circuit cases. Well, I'm not sure which cases. The contempt order was always out there. The question is did it have continuing effect, and they said no because the underlying order it's meant to coerce compliance with is gone. That was true in Verity, and that was true in Nishinsky, right? Well, but in Verity, actually, Your Honor, the distinction was that the order, that it was an affirmative order. In other words, the original injunction in Verity was an affirmative order, I believe, that required the defendants to do something affirmative. In this case, it was a prohibitive injunction. That's the point I was trying to make earlier in response to Judge Lynch's question. It was a prohibitive injunction. It said do not do X, do not complete the merger. And that's why once they do complete the merger, the preliminary injunction, even before it expired, the preliminary injunction has no value. It doesn't accomplish anything. And it's very clear, and this was actually argued at great length and briefed at length in the earlier contempt appeal, that the court has the power, the district court has the power when its prohibitive injunction has been violated in an act of contempt to then order in the contempt order that the status quo ante must be restored. Do you have any authority for that? Yes. Well, Your Honor, I could refile it, but I cited extensive authority in the original briefing on that appeal that Judge Stahl wrote the opinion on. Do you have any authority? You don't have authority? I was having trouble finding authority in your briefs to us in this appeal that supports that proposition. Well, the defendants didn't argue that the district court lacks, in this appeal, that the district court lacks power to coerce a return to the status quo ante. I'd be happy to resubmit the case. So that survives the expiration of the prohibitive order? Well, there's plenty of cases that seem to say the opposite of that, but I'm having trouble finding a case that suggests that once the prohibitive order expires. Within a week, file a 28-J letter, and please don't refer to something filed in the court years ago. Give us the citations that you're now relying on in response to Judge Barron's question. Absolutely, Your Honor. I assume, do I assume correctly that practically the defendants' companies are effectively barred from doing business in this country at this point by all of this? In other words, if the defendant himself tried to come back here, I assume that the criminal contempt would still be effective. Well, there has been no criminal contempt proceeding, Your Honor. Well, the sanctions against the defendant personally would still be effective, would they? Well, that's what the defendants are asking. As of right now, they're still effective, but the defendants are asking you to wipe them away. That they would go away. Yeah. And the reason he wants them to go away is he can't come back to this country unless they go away, and he can't reinvigorate a business in this country. I would say, Your Honor, that he can't personally, as far as I know, my understanding, I'm not an expert on this, but as far as I know, he can't personally come into the country without being arrested because of the civil arrest warrant. Civil arrest warrant, which I misspoke. That's what I meant. But he has absolutely continued to do business in this country through indirect subsidiary companies. Assuming appellant's theory was correct, and the $70 million judgment went away and the arrest warrant had to go away because the preliminary injunction order has expired, would there be anything that would prohibit Judge Ponzer from now finding them in criminal contempt for disobeying the prior lawful order? Yes, in fact, there isn't going to be any criminal contempt finding against them. Because Judge Ponzer doesn't have the power to impose criminal contempt sanctions. It has to be a prosecution initiated by the United States Attorney. And my understanding from communications with the United States Attorney's Office, just on behalf of my client, is that they are not going to prosecute him because they can't physically bring him into this country to do it. And I believe at this point that the time for doing it has expired. I mean, that's not me representing the position of the U.S. government. That's my understanding. But if these sanctions are overturned at this point, then Neuberger basically gets away with everything because he violated the preliminary injunction. It's just like what you said, Judge Sell. He did it because he felt it. But even if you wanted to do criminal contempt for a $70 million fine? Well, the $70 million fine is a civil contempt. But it wouldn't be a possible criminal contempt punishment? You mean for refusing to pay it? Yeah. I guess that's theoretically possible. But it's not what would prevent it. Because one of the issues in the case, and Bagwell talks about this, is some of this is what's the process due to a person who's going to be subject to a penalty? If it's coercive to comply with an order, you get less process. If the purpose is to punish you for not having followed a lawful order, rather than coercing compliance, you get more process. And what I guess the one way to understand what the appellant's argument is, at this point in the case, because you didn't seek a permanent injunction, the best way to understand what would be going on here is you would be punishing for having refused to comply with a prior order, in which case the right procedures are different than the ones Judge Ponser used. Well, I guess, Your Honor, what I would say is, and there's definitely case law that's in my brief that talks about this. I mean, I guess all I would say is that the contempt order, the reason, again, I answered this question before, but the reason why we didn't seek a permanent injunction is, I mean, I can answer that personally as the attorney. I mean, there seemed no purpose whatsoever to seek a permanent injunction that would say, you can't move the company to Austria, because they'd already moved the company to Austria. There was no point in doing that. It had already happened. What we wanted, and what Judge Ponser – You could have sought an injunction ordering them to unwind the merger, couldn't you? But that already happened. I mean, Judge Ponser ordered that. He ordered that as part of the contempt order. Yes, but you could have then had a separate order that would have done that. That would have had a purpose. I guess it didn't occur to me that that was necessary, Your Honor. I mean, that order is already there and has been affirmed by this court. I mean, the contempt order of Judge Ponser says, restore the status quo ante, and until you do so, I'm going to have this arrest warrant out there, and I'm going to impose these fines. And this court affirmed that. And so Angio Dynamics' view – I mean, that order is already out there. I don't know why it matters whether it's – what form it takes. It's an order. And the case law is very clear that contempt – civil contempt sanctions can survive the termination of the proceeding. And so that order survives because we have a judgment – I'm sorry, Judge. I've been wondering what this case is really about. Is this because you took the appeal? Are you expecting your client to come back into this country and, therefore, you're trying to remove all of the obstacles that stand in his way? Because, otherwise, it's a little hard to see why you bothered with this appeal. Yes. Your Honor, that's a good question that I've discussed with my client, and I'll tell you what the answer is, and that is because he believes that he's been a victim of injustice and he thinks that he still has hope that the rule of law will prevail and that he will be judged fairly. At least in my understanding of the record, I have a hard time seeing where he could be a victim of – a legitimate victim of injustice. He had a contract originally with a client over here, this gentleman's client, and it said that if there was an action involving patent rights, et cetera, your client had to pay. He didn't pay. He had a default judgment. Their argument is that he then strips the assets and moves them away so that he can't collect another judgment. Where's the impact? Your Honor, I don't want to spend the time necessary to give you a full answer here. Very short in terms of the underlying contract. The provision, there was a knowledge-qualified representation that my client's products did not infringe other patents. The summary judgment decision granting ADI's judgment in the Northern District of New York completely read out that knowledge qualifier. It was then appealed, and because the preliminary injunction in the contempt order was issued, Violating Ink, the subsidiary that entered into that underlying contract, had to file for Chapter 11 bankruptcy, and a trustee was appointed. The trustee then settled with ADI primarily for the purpose of dismissing the appeal. And so that underlying judgment, which we believe would have surely been overturned on appeal because the summary judgment decision was based on an absolute warranty rather than a knowledge-qualified warranty, never really was resolved on the merits. And so that's one of the things that certainly is the focus of my client's belief that he really has been unfairly treated by our court system. But may I now? We have a question for your brother. All right. Maybe we should have all three of you up here. No, that was a joke. Let's see if I can get my train of thought. Mac, just on your theory so I understand it, I understand there's a cap of $70 million, and just under the sanction we're beyond the cap now. In other words, he hasn't hit $70 million. Under the scale that he's adopted, haven't they already run into the $70 million? Yes, they already had at the time. Accrued at least that amount. Suppose there was no cap, just so I get your theory. Your theory would be even today after there's an expired order, the fines could continue to escalate in order to force compliance with an expired order? I guess, Your Honor, what I would say is it's not an expired order. It's an order by Judge Patterson. No, no, no, no, no, no. I understand complying with the contempt order. I mean, the reason we call it civil contempt is because the contempt order is meant to force compliance with an underlying order. That underlying order is the preliminary injunction, right? That's what you're supposed to comply with. You're supposed to comply with the order to purge your contempt. That's what you're supposed to comply with in civil contempt. But the reason we call it civil, I thought, was because the contempt is to induce compliance with the underlying order. Yes, but if the underlying order is a prohibitive injunction, and that's already been violated. So on your theory then, even today, when that preliminary injunction has expired, you could have escalating fines going on, I don't know until when, in order to induce compliance, even after default judgments entered, even after payment? I mean, when would it end? Well, but there hasn't. The thing is, Your Honor, I think this is an excellent question and a very important question, but there hasn't been payment of anything, okay? There hasn't been payment of one penny of the $75 million judgment that my client has. No, that's not what I'm, I just want to get the logic of your position. Forget whether they still have to pay the $70 million because that's water over the bridge. I'm asking on your theory of it, absent the cap, your theory seems to point to the idea that, I don't know, to the end of time, you could have escalating things that they have to somehow reverse this merger, even after default judgment has been paid? No, not after the default judgment has been paid, absolutely not. If the judgment had been paid, we wouldn't be here at all, Your Honor. Okay, so until that time would be the idea. Is that the idea, escalating fines until the default judgment is paid? Well, I would say, I mean, this Court held that the fines couldn't escalate, so I'm not going to argue that they could still escalate forever, but the sanctions can remain in place, and the case law, is it okay if I continue, Your Honor? Finish. Thank you. The case law that cited in the brief from many other circuits is very clear that the sanctions can continue, and the Supreme Court actually said in Bagwell, civil sanctions continue indefinitely until the content nor purges contempt, indefinitely as the Supreme Court's word. But the injunction hadn't expired, though, the underlying injunction. Well, but I guess here I would go back, Your Honor. I get it, I get it. To the fact that it's, and I just wanted to be clear about one thing, though, just factually with the Court's lead. There's the $70 million in contempt fines that's payable to the U.S. government. Not a penny of that has been paid. But there's also the $75 million default judgment held privately by my client. Not a penny of that has been paid either. The purpose of all of this, of restoring the status quo ante, is to make it possible for Angio Dynamics to collect at least some of that $75 million uncollected judgment. And so in answer to your question, Judge Barron, I would say that this is an extremely unusual situation, as Judge Stahl said, where every order of every court has been violated. This Court's orders have been violated multiple times because you said the preliminary injunction was valid. They violated it. You said the contempt order was violated, was valid, and they haven't complied with that either. The only reason why we're here at all is because they refused, utterly refused to comply with the contempt order for so long that a default judgment finally entered against them. That's the only reason why this issue even exists. The way it's supposed to work is Judge Ponzer issues the contempt order, says restore the status quo ante, and they actually do it. And Neuberger doesn't become a fugitive, but he gets taken into custody. And that gives him an incentive to do it. And then he would have undone the merger long before the judgment entered, and then we would have been able to collect the judgment, and then this issue wouldn't have even been here. The only reason why we're here at all is because they thumbed their nose at Judge Ponzer and this Court for long enough that the judgment has entered and the preliminary injunction has expired. And I will say the only reason we didn't seek a permanent injunction, as I said before, is because we had an order from the District Court telling them to restore the status quo ante. We believe that order is still in effect, I believe. And a permanent injunction telling them not to carry out the merger, I saw no purpose in seeking that. If I could just, with the Court's leave, ask, you mentioned a Rule 28J letter, and I just wasn't entirely clear on what kind of case law you were seeking. You seem to say that there's authority that for a prohibitory injunction, preliminary injunction, violation of that which results in a civil contempt order. The civil contempt, coercive civil contempt, not compensatory, coercive civil contempt, can survive as a sanction due even after the underlying prohibitory injunction has expired. And I have not seen such a case. The cases seem the opposite. Well, I guess I don't – Verity is not a prohibitory injunction. Yashinsky, I think, might be. But I haven't seen a case in which they've said a prohibitory injunction, which results in a civil contempt order because of its violation, that the civil contempt order sanctions to coerce compliance with that prohibitory injunction survives even after the injunction has expired. But if there is such a case, it would be good to see it. Okay, I'd be happy to. And I apologize. When I answered your question earlier, the case law I was talking about in the earlier part was simply to the point that, the very clear point, that a district court does have the power to order the restoration of the status quo ante. I think you're asking for something a little bit different. Yeah, I'm asking whether the end of the – there's an abstract status quo ante and then there's coercing compliance with an order. What happens when the order expires? Does the contempt sanction still survive? Okay, yes, I understand. So whether or not you cited such a case before, you now have the opportunity to cite such a case. But try to get it in in the next seven days. Thank you. And then we'll give you the chance to file a 28-J reply to whatever he files. But it must, please, be responsive to that letter. Otherwise, we'll strike it. Thank you. We'll do that. And may I – do I still have time for my rebuttal? Why don't you take two or three minutes. Thank you. And tell us. We've occupied a lot of your time. I understand. I'll be very brief. First, just with respect to my brother's point that there's a difference between a prohibitory injunction and affirmative, I don't think he'll be able to find any cases that make that distinction. And if you think about it, it really doesn't make any sense. The reality is the reason why we are here today is that neither ADI nor the district court thought seriously enough about preserving Germany as an enforcement injunction to carry out the preliminary injunction in terms of a permanent injunction. And I reiterate, nor did you raise this issue when you could have. No, we didn't. And the other point I'd like to make now is to address that. I think I got sidetracked in my original opening presentation. Not only do we take the position that we didn't have the opportunity to, and it really wouldn't have been appropriate to raise to you, but we also say that it's a jurisdictional issue that can't be waived. And regardless of whether we should have raised it earlier or not, because it's jurisdictional, it can be raised at any time. The FTC court in the Second Circuit appears to have raised it sua sponte, and that suggests that it's jurisdictional. And also, under the Supreme Court's discussion of what the difference is between just a claims processing rule and jurisdictional issue, the contract case that's cited in our reply brief, this clearly falls within the category of jurisdictional issues. Indeed, the district court's authority and jurisdiction to sanction contempt arises from statutes of Congress, the Judiciary Act of 1789 as well as Section 18 USC 401, which is a very interesting history, by the way. It was first enacted. All right, I won't go there. But I will include, if I can, in my Rule 28J, a brief point about that and a citation to a very interesting law review article by Justice Frankfurter that gives the history of contempt and puts a lot of these issues in context. Thank you. Thank you very much.